Page 10-1048 People v. General Land Page 10-1048 General Land Please introduce yourself. May it please the courts, Benjamin Wimmer on behalf of the defendant General Land. I'd like to reserve two minutes for rebuttal, please. This case concerns a charge of felony aggravated cruelty to animals that the state brought after my client and her family took the family's pet pitbull, Carmelo, to the veterinary. A chain was embedded in Carmelo's neck, deep enough to require either euthanasia or extensive surgery that my client was unfortunately unable to afford despite her attempt to barter for Based on the evidence that the jury received at trial, it could have concluded that the chain became embedded in Carmelo's neck over a period of five to seven weeks through a biological mechanism known as pressure necrosis. Basically, the chain, which had served as Carmelo's collar, was too tight, cut off blood flow to the outer layers of tissue and sanctuary. So let me ask you this question directly. Are you saying that the nature of the injury to the dog, as a matter of law, precludes a cruelty to animal charge? We aren't making that assertion now. That would basically be a reasonable doubt argument, which we haven't brought up. What we are arguing in this case is that it's highly doubtful whether or not a jury would conclude, based on both the nature of the injury and the other evidence in this case, suggesting that Ms. Land did not intend to hurt her dog, it's highly doubtful that the jury would have concluded. Now, why do you insist on this distinction between a bench trial and a jury trial when under our case law, as best I can tell, trier is a fact or trier is a fact, whether it's one trier a fact or 12 triers a fact? Well, I mean, the important difference in this case, Your Honor, is that when there's a bench trial, as there was in this Court's decision in People v. Primbus of last year, the appellate court assumes that the trial court appropriately applied the law unless there's some sort of explicit indication to the contrary. And in that case, not only did the court assume that, it was clear from the court's explicit findings that it discredited defendant's testimony. Let me ask you this regarding the jury instructions. You're saying that there was one that failed to address specific intent in the animal cruelty charge, but was there the elements instruction that laid out each of the elements that had to be proved beyond a reasonable doubt before the jury could find him guilty? And was that instruction adequate? No, Your Honor. The issues instruction did not make any mention of a requirement of an intent to harm or kill the animal. All it required was an intentional act which caused the injury and which the jury could conclude meant only that the defendant had to intentionally, in this case, intentionally put the chain around Carmelo's neck rather than intend that the chain would cause the injury or kill the animal. What if an individual intent purposely did not feed an animal? Could the person, would they, an animal, cruelty to animal charge would lie, but you're saying that it would be up to the jury to find out whether, to determine whether or not the absence of feeding would amount to cruelty? In this case, animal cruelty technically isn't the charge here. There isn't a requirement that the jury find cruelty. What it needed to find was causation of a serious injury and intent to cause that serious injury. What about an intent, what about a failure to prevent what would become a clear serious injury to the dog? Well, in that case, a failure to prevent an injury easily could potentially be a violation of the owner's duty statute, which is basically a misdemeanor animal neglect statute, specifically defined in terms of omission. Animal owners have a duty to, among other things, provide humane care and treatment and veterinary care when necessary to prevent suffering. If that had been charged in this case, we would obviously be facing very different questions right now. But in the absence of a positive act that causes injury, married to a specific injury, we would be facing a conviction of felony aggravated cruelty. You're saying that you're not presenting a reasonable doubt challenge, but that almost sounds like a reasonable doubt issue. Well, Your Honor, I mean, obviously, you know, we haven't specifically said that any reasonable jury could conclude that Miss Land intended to hurt Carmelo. It's kind of questionable whether anybody could based on, I mean, three chief factors. One, the fact that the mechanism of the injury was so strange. Second, the fact that there was much more obvious reason for placing the chain around Carmelo's neck, which was preventing him from running loose. Can we, as a reviewing court, decide that the facts here lead to only one conclusion, and that is specific intent was present in the defendant? Based on the evidence that was presented? Based on the evidence in the record? That specific intent was present? Right. So that the absence of that instruction to the jury was rendered harmless? Your Honor, based on the record, no. Not only was the error not harmless in this case, there was plain error. In order to show plain error, there's two conditions. One, that the evidence regarding guilt or innocence is closely balanced, and that's clearly satisfying. But, you know, it doesn't stop there. Plain error doesn't just require closely balanced evidence, it requires an error such that the confidence in the outcome is undermined. And it had to be a serious error. And if it's not a serious error, in light of the evidence. Yes. Error in the jury instructions, Your Honor, has to be reviewed in general, unless it is clear beyond a reasonable doubt that the jury would have reached the same conviction that they did, even if they had been instructed on it. Now, lack of intent was Ms. Land's sole defense that defense counsel presented at trial. Stated that in opening arguments, and in closing arguments, specifically said, you will find that something dumb happened here, but not something criminal. Now, the jury was given instruction that told it, it did not even have to consider the only defense that Ms. Land presented. And the state specifically latched on to that aspect of the instructions, telling the jury, we don't have to prove that Ms. Land intended to hurt that dog. In light of that, I mean, the state basically used the instructional error in this case to make an end run around the entire trial process. No fact finder ever considered the only defense that Ms. Land presented. And under People v. Ogonzola, which the Illinois Supreme Court decided in 1980, when the principle disputed issue of fact at trial is the presence or absence of criminal intent, failure to instruct a jury on that one critical aspect of the offense fundamentally undermines the fairness of the trial. The error is both reversible and plain. The court should reach it, vacate Ms. Land's conviction, remand for a new trial before a properly instructed jury. In addition to that, even if the error did not fundamentally undermine the fairness of trial, the evidence in this case is closely balanced. First evidence of which is the fact that- Let me stop you for a minute. You say the evidence in this case was closely balanced. You had a tow chain weighing 3.4 pounds on a dog's neck in hot weather. Leaving the dog outside makes it closely balanced. I mean, Your Honor, if what the statute required here was negligence, obviously this would present a different question. But what the state had to show here was that Ms. Land intended to cause Carmelo to suffer the serious injury that he did. But she placed the chain around his neck, intending that it sink into his flesh. Well, wouldn't it be reasonable to conclude if you're going to put a 3.4 pound neck, a tow chain around a dog's neck, that something terrible is going to happen? Your Honor, we haven't asserted that no reasonable jury could reach that conclusion. But it's quite possible that a jury in this case would have concluded that Ms. Land didn't intend for anything terrible to happen, let alone the serious injury that did occur in this case to happen. I mean, the history of this case from the witnesses showed that the defendant here continually abused this dog. Well, Your Honor, I mean, in order to be able to show that there was specific intent to cause the harm that did occur here, the state needs to be able to show that Ms. Land was both aware of the fact that this injury could occur when she put the chain on Carmelo. But would any reasonable person be aware when they're putting a 3.4 pound tow chain around a dog's neck that terrible things are going to happen? Your Honor, not necessarily. I mean, I certainly wasn't aware of this. Do you have a dog? No, sir, not since I was a kid. All right. I would not have done this to a dog. But the fact that I wouldn't have done so doesn't mean that anybody who would do so was necessarily intending that the dog suffer a serious injury. Now, the state lays a lot of stress in its briefs on the fact that Dr. McCraddock, the veterinarian, testified that at the end of this probable five- to seven-week period, when Carmelo was brought to the veterinarian, the injury was obvious at that point. If the jury decided to credit Dr. McCraddock, that's indisputable. But that does not show that it was obvious that the chain was going to cause a serious injury to Ms. Land five to seven weeks early. Tell us what kind of evidence do you think would satisfy the burden that you are putting on the state to show the specific intent that you believe is absent here? What more would they have to prove? That she made a statement that I'm putting this 3.4 chain on this dog for the purpose of, and I'm going to leave it on there for five weeks, and I don't care what happens to this dog. Is that the sort of evidence that you're looking for? Well, certainly that would probably satisfy, Your Honor. But in the absence of that evidence. There are other ways it could be shown. The state in this case basically posited this five- to seven-week period. We know what happened at the end of it. We know what was happening before the beginning of it. But there's no testimony regarding how quickly the injury developed, how soon it would have been obvious to Ms. Land. Do we allow the jury to make inferences based on the evidence that is available? Because sometimes we don't have all the evidence that you'd like to see. Obviously a jury can draw whatever inferences that a reasonable fact finder could make from the evidence presented at trial. But that's not indicative that they are going to reach that evidence. In this case, there was no, that they are going to make those inferences, rather. In this case, there was no direct testimony regarding how quickly the injury progressed, when Ms. Land would have known that there was a serious injury, when she would have known that there was an injury being caused. And in light of that, this Court can't assume on appeal that if properly instructed to consider Ms. Land's defense, the jury would have concluded that beyond a reasonable doubt that she intended to harm Carmella. All right. Well, when the police came, was one of the first things that she said is, the dog ain't even mine? Yes, Your Honor. That was... So she knew something was going on with that dog, didn't she? Well, it was clear, Your Honor, from a lot of the testimony regarding her taking Carmella to the veterinarian and the police visit afterwards, that she was ashamed of the fact that this had happened to Carmella while she was taking care of him. I mean, it was a horrible injury, and she was one of the dog's caretakers. She was not happy about this, and she was clearly afraid of the fact that other people could associate what had happened with her and blame her for it. But that's different from saying that five to seven weeks earlier, she knew and specifically intended that this injury would be caused. In fact, the fact that Ms. Land took Carmella to the veterinarian is highly suggested that she did not intend for this injury to be caused five to seven weeks earlier. I mean, nobody outside the family discovered this injury. She took the dog in on her own and exposed herself to potentially serious... It certainly is consistent with her discovering the injury at that point. And had she discovered it on the day before, she might have taken it on the day before. If she discovered it a week prior, she would have taken it then. That's a... You'll need to wrap up, and then you'll get two minutes for rebuttal. All right. In light of this, a serious error in the jury instructions. This Court can't conclude that Ms. Land's trial was fair. It must vacate Ms. Land's conviction and remand for a new trial before a properly instructed jury. Thank you. Thank you. May it please the Court, Counsel, Christine Cook, Assistant State's Attorney on behalf of the people. Janelle Land was not ashamed. Janelle Land was furious that the police had the audacity to come to her house and punish her for the way she abused this dog. The testimony before the trier of fact was pretty gruesome and pretty simple. And it defies common sense to stand before this Court today and allege that this was nothing but ignorance or negligence. All right. Could have, would have, should have. Let's accept all that. But the question still remains what the trier of facts are entitled to be informed or instructed upon. And if they are not instructed properly, we have to address the issue whether that failure to instruct properly impinged upon the defendant's fair trial. Absolutely. So what is the State's burden? The State's burden is to establish beyond a reasonable doubt that the defendant committed an intentional act and that she committed an intentional act with the intent of injury or death to that animal. Was the jury so instructed? Not specifically in those magic words. The jury was instructed, and I just want this Court to be aware that the instruction was pre-primus, but does not warrant reversal. The jury instruction and the record shows that Judge Fecorato was painstakingly careful with both parties to fashion an IPI instruction because the IPI did not exist. And this instruction given to this jury literally mirrors the language of the statute. So the jury was instructed to sustain the charge of aggravated cruelty to an animal. The State must prove the following proposition, that the defendant intentionally committed an act that caused a companion animal to suffer serious injury or death. Would it have been better to have put specific intent in front of injury or death? Of course it would have been, but that's not the facts that we have, and hopefully cases after this will no longer have this problem. What's the standard for reviewing a jury instruction? Does it have to be 100% accurate? No, what we have to determine is whether or not the jury was properly instructed in order to uphold that verdict. And in this case, there's absolutely no doubt about that. There is a plethora of evidence in this case about the defendant's intent to injure or kill this dog. She purchased an industrial toe chain so heavy that not even both cubs could remove that chain from Carmelo's neck after it was euthanized. She put that industrial toe chain on Carmelo to weigh the dog down because she was irritated that the dog, for some crazy reason, kept running away from her abusive and neglectful conduct. She ignored repeated warnings by the police who were consistently called back to her house about the abuse of that dog. The chain was so tight around Carmelo's neck that not even a finger could be wedged between the dog's skin and that collar. The dog was emaciated. His head was literally pinned to his chest. And after leaving Carmelo in severely hot weather in July with no food or no shelter, her response to the police was, well, you know, he must have knocked over the water himself and there's a tree in the backyard that might provide shade for him in the afternoon. And then there's her reaction when the police came to her house, nodding, oh, dear God, what a horrible thing has happened. You know, as I think we've made clear, we understand what the facts are and we're really not trying to be further informed about those facts, but there is a concern regarding the prosecutor's argument that he put to us right before he ended his initial argument that basically the argument that the prosecutor made deprived her of the claim that she didn't have the specific intent to cause this injury to this dog. Why shouldn't we give credence to that? Because the argument is misplaced, Your Honor. What the defense attorney argued, and properly so, was that the state was required to prove not just the specific intent to commit an act, but the specific intent to cause injury or death to the dog. That was always the issue before the trial, in fact. What the defense attorney was arguing in closing arguments was that the state was required to prove intent to kill. And that is not what the statute requires. It requires us to prove specific intent to injure or kill. That was a rebuttal to the argument made by defense counsel. The jury was never told that we were not required to prove beyond a reasonable doubt specific intent to injure or kill. And, in fact, that was the cornerstone of the entire case. The jury was never misled in this case. Firing any other questions from this Court, the people respectfully request that this Court affirm the conviction and sentence of Janelle Land for animal cruelty. Thank you very much, Ms. Cox. Mr. Wimmer, what's wrong with an instruction that mirrors the language of the statute? Well, the language of the statute, Your Honor, doesn't explicitly put forth every element of the offense. This occurs occasionally. Where do we get the elements of the offense from? In this case, it's the language of the offense when combined with statutory rules of construction, governing the construction of criminal statutes in Illinois. Under these rules, unless the legislature clearly intended a specific intent crime, every element of the offense has to be accompanied by a mental state element. When there's one element listed for the entire statute, it implicitly applies to every element of the offense. So in this case, I'm sorry, go ahead. What about an instruction that mirrors the language of the statute that we conclude was close enough? Your Honor, I mean, this Court has consistently concluded that those instructions that follow the language of a statute but omit the mental state element are not close enough. This happened in Abdul-Mutakabir from 1998 where a charge... It's in your brief? Yeah, it's in the brief. You can check them out. Abdul-Mutakabir and Cully, C-U-L-L-Y. And regarding the standard of review, it is de novo review whether the instruction accurately reflects the law as charged. And in this case, because, you know, the jurors are... Let me ask you, what were the attorneys to do when they don't have an IPI instruction, they don't have a case that sets out what the instruction should say, all they have is the statute, and everybody made their best effort to determine, to prepare to write up a non-IPI instruction that accurately reflected or mirrored the language of the statute. What more... Your Honor, I mean, it would have been easy to write an instruction that did specifically instruct the jury as to this point. They could have included a clause... Sure, they thought it was not that easy. They may not have been thinking of it at the time, Your Honor, but it was plain error. Furthermore, I'd like to point out, this is another issue raised in the brief, there was ineffective assistance of counsel for defense counsel not to realize that the jury had to be instructed on the one element of the offense that was critical. I understand why you put the burden on him, but it seems that it was a group effort. This is true, Your Honor. There was no objection at the time. All right, you'll need to wrap up. All right. The jury in this case was not instructed that it had to consider miscellaneous defense, and trial counsel specifically told it that it did not have to consider miscellaneous defense. In order for a trial to be fair, the jury has to consider it, the conviction must be vacated, the case remanded for a new trial before a properly instructed jury. Thank you. All right, thank you very much, Mr. Weber. Ms. Cook, case to be taken under advisement.